328 So.2d 100 (1976)
STATE of Louisiana
v.
Wes O'NEAL.
No. 56994.
Supreme Court of Louisiana.
February 23, 1976.
Rehearing Denied March 26, 1976.
*101 Alvis J. Roche, Lake Charles, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., Gregory D. Lyons, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Defendant was charged with the attempted theft of $1306.61 (later reduced to $1256.61) from Wilford Broussard. After a trial by the judge he was convicted and sentenced to pay a fine of $200 and costs, or serve 60 days in the parish jail, plus one year in the parish jail, which was suspended during a one year probationary period. From this conviction he appeals, raising ten assignments of error.
On July 7, 1973 Wilford Broussard was injured, allegedly while in the course of his employment. Based on this injury, he filed suit against his employer, Jake's Produce.
Defendant is an agent for a disability insurer whose policy, issued to Jake's Produce, covered defendant's injury. However, the suit filed by Broussard was independent of the claim under this disability policy. Moreover, defendant was unaware that he was covered by such a policy.
*102 A recapitulation of each witness' testimony helps to understand the case.
Broussard testified: he could neither read nor write, though he could read numbers; defendant came to his house to ask if he would sign a claim form which would enable defendant's company to pay him a sum of approximately $800; Broussard informed defendant that he would sign nothing without the authorization of his attorney, Mr. Bond; they proceeded to Bond's office where Broussard signed the claim form; later, defendant again visited Broussard at his home with other forms to sign; Broussard's son informed him Bond had left a message that Broussard was to sign the forms and go to the bank with defendant to receive payment. Prior to arriving at the bank, Broussard said he endorsed a check without looking at its face. In fact, because the check was among many other papers and was attached face down to a clip board. Broussard said he was not aware he was signing a check. At the bank they first approached a drive-in-window, and the teller informed them that a bank official would have to approve the check. They entered the bank and got the necessary approval. When the check was presented for payment, Broussard testified that he noticed the check was for $2106.61, much more than the $800 he expected, and he told the teller not to cash it. Accordingly, she stamped the check "void" and returned it to defendant. Defendant went directly to the bank official and handed him the check. Broussard told the bank official the check was his and demanded it be given to him. The official complied, and Broussard went to Bond's office with the check. The attorney notified the sheriff's department.
Mr. Bond testified that neither he nor Broussard was aware of the coverage afforded by defendant's company's policy. Defendant contacted Broussard to sign claim forms which would allow the collection process to begin. It was Broussard's custom to sign nothing without Bond's approval. None of the forms revealed the amount of the recovery. Later, on October 22, 1974, defendant called Bond and told him he had a check made out to Broussard in the amount of $800 or $900, as nearly as Bond could recall at trial. Defendant asked Bond to arrange to have Broussard sign the check without having to visit Bond's office a second time. In compliance, Bond called his client's home and left word with his older son that Broussard was to sign the check and take the proceeds. Bond had no more to do with the matter until Broussard appeared at his office with the crumpled check stamped "void" and told him of the incident at the bank. It was not until two days later that defendant told Bond that the check was an overpayment and that he was going to return the excess to his company. After charges were filed, defendant's company reissued to Broussard a check for $2106.61.
The bank teller who was asked to cash the draft testified defendant and Broussard came to her window and she told them they would have to get the approval of one of the bank officials in order to cash the draft. This was done, and, when they returned to the window, defendant asked her to divide the proceeds of the check into two envelopes. Broussard was to get $850, defendant the rest. She refused. Broussard then told her not to cash the check, so she stamped it "void."
The bank official testified that only after the teller had stamped the check "void" did defendant mention to him that he wanted to buy a cashier's check for the alleged excess portion of Broussard's check.
Defendant testified he initially went to Broussard's home to have him sign the claim form, but, because he would not, they proceeded to Bond's office to get his approval. Bond approved. Defendant went to Broussard's home the second time to have him sign the closing forms and endorse the check. He testified that he told Broussard that the check was excessive *103 and that he would be paid only $850. He arrived at this amount, he said, due to his personal investigation into Broussard's claim and his conclusion that the policy did not cover "partial disability, loss of time." After they had obtained the bank official's approval of the check and presented it for payment, Broussard, said defendant, for the first time objected that the check was for an amount exceeding the $800 he had been promised. Defendant said it was his intention to return the excess to his company in the form of a cashier's check.
After the incident had been reported to the sheriff's office, defendant was charged with the attempted theft of $1256.21, the amount of the alleged overpayment which he alleged he was going to return to his company.
Assignments 1, 2, 3 and 9 stem from the trial court's refusal of defendant's motion for a directed verdict. In Assignment 3, defendant contends the State did not prove its case beyond a reasonable doubt. In Assignments 1, 2 and 9, defendant contends the State failed to prove he had the requisite specific intent to commit the crime of attempted theft.
A motion for a directed verdict under C.Cr.P. 778 does not lie unless the State introduces no evidence at all from which the trial jury could reasonably conclude that the defendant was guilty of the offense charged. State v. Cloud, 319 So.2d 793 (La.1975); State v. Butler, 322 So.2d 189 (La.1975); State v. Douglas, 278 So.2d 485 (La.1973). Hence, where, as in the case before us, (considering only the evidence of the prosecution), there is some evidence of each essential element of the crime, this court will not weigh the sufficiency of the evidence.
To commit the crime of attempted theft, defendant must have the specific intent to commit theft, and do an act for the purpose of and tending directly toward the theft. R.S. 14:27. To commit the crime of theft, he must have the intent to deprive permanently. R.S. 14:67.
The evidence introduced by the State indicates defendant sought to cash a check made to the order of Broussard without informing him of the full amount and without giving him the entire proceeds. From this and other evidence adduced, the specific intent to permanently deprive may be reasonably inferred. Hence the motion for a directed verdict was properly denied.
Assignments 1, 2, 3 and 9 are without merit.
In Assignment 4, defendant complains that the sentence imposed was in excess of that allowed by law. He was sentenced to pay $200 and costs, or to serve 60 days in the parish jail, plus one year in the parish jail, which was suspended for a probationary period of one year. The applicable penalty provision is found in R.S. 14:27(D)(2):
". . . If the offense so attempted is theft or receiving stolen things, and is punishable as a felony,[1] he shall be fined not more than two hundred dollars, or imprisoned not more than one year, or both;"
Clearly, the sentence imposed is within the statutory limitations.
Assignment 4 lacks merit.
Assignments 5, 6, 7 and 8 concern defendant's allegation that he was deprived of his statutory right to a three day delay between conviction and sentencing and that his motion for a new trial was therefore improperly refused.
Defendant was found guilty on July 31, 1975; he was informed at that time that sentencing would be held the following *104 morning. On August 1, 1975 he was sentenced, and on August 5, 1975 he submitted his motion for a new trial.
C.Cr.P. 873 provides the following right to a delay:
"If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately."
The record clearly reveals that the trial court inquired whether defendant was prepared for sentencing and counsel responded in the affirmative. Thus, by the terms of the statute, any right to a delay was waived.
Nevertheless, defendant had no right to a three day delay. C.Cr.P. 873 grants such a right only to persons convicted of a felony; defendant was convicted of a misdemeanor.[2] Sentencing was properly imposed.
C.Cr.P. 853 requires a motion for a new trial to be filed prior to sentencing:
"A motion for a new trial must be filed and disposed of before sentence. The court, on motion of the defendant and for good cause shown, may postpone the imposition of sentence for a specified period in order to give the defendant additional time to prepare and file a motion for a new trial."
Defendant's motion for a new trial, submitted four days after sentencing, was therefore untimely. The article gives the trial court the discretion to postpone sentencing while defendant perfects his motion. Yet when asked by the trial court if he was prepared for sentencing, defense counsel responded that he was.
Assignments 5, 6, 7 and 8 lack merit.
Defendant's tenth assignment concerns the trial court's alleged refusal to provide defendant with a complete record of the trial and proceedings. Because a complete record has been lodged with this court this assignment is without merit.
The conviction and sentence are affirmed.
NOTES
[1] Because the amount defendant was convicted of attempting to misappropriate was not less than $100, the offense he attempted is a felony.
[2] R.S. 14.2 defines felony as "any crime for which an offender may be sentenced to death or imprisonment at hard labor."

Because the crime of which defendant was convicted does not provide for "imprisonment at hard labor," his conviction is a misdemeanor.